# CASES

## ARGUED AND DETERMINED

### IN THE

# UNITED STATES CIRCUIT COURTS OF APPEALS AND THE CIRCUIT AND DISTRICT COURTS

---

### AMMERMAN v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. February 16, 1911.)

### No. 3,392.

**1. PERJURY (§ 25\*)—REQUISITES OF INDICTMENT—MATERIALITY OF TESTIMONY.**

In a prosecution for perjury, it must be alleged in the indictment that the matter sworn to was material, or the facts set forth as falsely or corruptly sworn to must be sufficient in themselves to show such materiality.

[Ed. Note.—For other cases, see Perjury, Cent. Dig. §§ 82–89; Dec. Dig. § 25.\*]

**2. PERJURY (§ 25\*)—INDICTMENT—SUFFICIENCY.**

An indictment for perjury, alleging that on the trial of a criminal case it was a material inquiry whether the defendants were in a certain town "during the day or night of the 28th and early in the morning of the 29th" of a certain month, and that defendant corruptly and falsely testified on said trial that two of said defendants were in another state up to 8 or 9 o'clock on the morning of the 28th, sufficiently showed that such testimony was material, although it did not specifically so allege, nor that, if true, it would exclude the guilt of the defendants on trial to whom it related; it being sufficient that such testimony was competent and its exclusion would have been error.

[Ed. Note.—For other cases, see Perjury, Cent. Dig. §§ 82–89; Dec. Dig. § 25.\*]

**3. CRIMINAL LAW (§ 1169\*)—HARMLESS ERROR.**

On the trial of a defendant for perjury in swearing falsely as a witness in a prior criminal case, it was prejudicial error to permit the government to show that documentary evidence, which would either have confirmed or contradicted defendant's testimony, was not produced on such trial; defendant having had no control over the introduction of evidence therein.

[Ed. Note.—For other cases, see Criminal Law, Dec. Dig. § 1169.\*]

**4. PERJURY (§ 32\*)—EVIDENCE.**

Evidence offered by a defendant on trial for perjury *held* competent and erroneously excluded in view of the previous admission of evidence on the part of the government, over objection, which such offered evidence tended to contradict.

[Ed. Note.—For other cases, see Perjury, Dec. Dig. § 32.\*]

---

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

5. WITNESSES (§ 372*)—CROSS-EXAMINATION TO SHOW INTEREST OR BIAS.

On the trial of a criminal case, where a witness had given material and incriminating testimony against defendant, it was competent to show on cross-examination, for the purpose of affecting his credibility, that he was also under indictment for perjury, and had been advised by his attorney that if he would testify against defendant the indictment against him would be dismissed.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1192–1199; Dec. Dig. § 372.*]

6. CRIMINAL LAW (§ 730*)—APPEAL AND ERROR—REVIEW—HARMLESS ERROR—REMARKS OF COUNSEL.

Improper remarks made by counsel for the government in a criminal case in his argument to the jury are not ground for reversal of the judgment, where they were promptly stopped by the court, and the jury were told to disregard them as improper.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 1693; Dec. Dig. § 730.*]

In Error to the District Court of the United States for the Western District of Arkansas.

Lon Ammerman was convicted of perjury, and brings error. Reversed.

For opinion below, see 176 Fed. 635.

Ira D. Oglesby, for plaintiff in error.

John I. Worthington, U. S. Atty (L. W. Gregg, Asst. U. S. Atty., on the brief).

Before SANBORN and ADAMS, Circuit Judges, and WM. H. MUNGER, District Judge.

WM. H. MUNGER, District Judge. Lon Ammerman, plaintiff in error, was indicted, tried, convicted, and sentenced to imprisonment, for the alleged crime of perjury, and brings the case here for review. Numerous assignments of error are presented, a few only of which are necessary to be considered.

The indictment charged in substance that, at the June term, 1909, of the United States District Court for the Western District of Arkansas, Ft. Smith Division, there came on to be tried, and was tried, a certain case in which the United States prosecuted James C. Bell, John Patterson, and George B. Thompson, upon the charge of breaking into a building at Huntington, Sebastian county, state of Arkansas, used in part as a post office, with intent to commit larceny in the part of the building so used as a post office, and with the larceny of money and stamps of the United States; that at and upon the trial of said issue Lon Ammerman appeared as a witness on behalf of said defendants and was then and there duly sworn and took his oath as such witness before H. B. Armistead, clerk of the said court, that evidence which he, the said Lon Ammerman, should give on said trial should be the truth, the whole truth, and nothing but the truth, the said clerk then and there having due and competent authority to administer said oath; that it then and there, upon the trial of said issue, became and was a material inquiry whether the said James C. Bell, John Patterson, and George B. Thompson were in the town of Huntington, in

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep't Indexes

Sebastian county, in the state of Arkansas, during the day and night of December 28, 1908, and early in the morning of December 29, 1908; that the said Lon Ammerman, after taking said oath, and as a witness in said cause upon said trial, willfully and corruptly and contrary to his said oath, did swear and depose, among other things, in substance to the effect that he knew said defendants James C. Bell and John Patterson, and that they, the said James C. Bell and John Patterson, came to his hotel, the Buffalo Hotel, in Sapulpa, Okl., about December 23, 1908; that they, the said James C. Bell and John Patterson, remained at his said hotel every night continuously until December 28, 1908; that said James C. Bell and John Patterson ate breakfast at said Buffalo Hotel, in Sapulpa, Okl., on the morning of December 28, 1908; that the said James C. Bell and John Patterson left said Buffalo Hotel in Sapulpa, Okl., about 8 or 9 o'clock a. m., of December 28, 1908. Whereas, in fact, it was not and is not true, and at the time of said swearing and deposing the said Lon Ammerman did not believe it to be true, that he knew said James C. Bell and John Patterson, and that they, the said James C. Bell and John Patterson, came to his hotel, the Buffalo Hotel, in Sapulpa, Okl., about December 23, 1908, and that they, the said James C. Bell and John Patterson, remained at said hotel every night continuously until the 28th of December, 1908. And it was and is not true, and at the time of so swearing and deposing the said Lon Ammerman did not believe it to be true, that said James C. Bell and John Patterson ate breakfast at said Buffalo Hotel, in said Sapulpa, Okl., on the morning of December 28, 1908, and in fact it was not and is not true, and at the time of so swearing and deposing the said Lon Ammerman did not believe it to be true, that said James C. Bell and John Patterson left said Buffalo Hotel, in said Sapulpa, Okl., about 8 or 9 o'clock a. m. on December 28, 1908.

The indictment contained a concluding averment as follows:

"And so, the grand jurors aforesaid, on their oath aforesaid, do say, that the said Lon Ammerman, in manner and form aforesaid, having taken an oath before a competent tribunal, in a case wherein a law of the said United States authorized an oath to be administered, that he would truly depose and testify, willfully, and contrary to his said oath did depose and state material matters which he did not then believe to be true, and thereby did commit willful and corrupt perjury, contrary to the form of the statute in such case made and provided and against the peace and dignity of the said United States of America."

The statute upon which this prosecution was based is in part as follows:

"Every person who, having taken an oath before a competent tribunal, officer or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare or certify truly, and that any written testimony, declaration, deposition or certificate by him subscribed is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe is true, is guilty of perjury."

This statute requires that the testimony given must not only be false but must be material to the matter.

It is claimed in support of a motion in arrest of judgment that the indictment does not charge an offense, in that it does not allege or

show that the testimony given by said Lon Ammerman that the defendants James C. Bell and John Patterson, then upon trial, were at his hotel in Sapulpa, Okl., from about December 23, 1908, and remained there every night continuously until December 28; 1908, and ate breakfast on the morning of December 28, 1908, and left said hotel at about 8 or 9 o'clock a. m., on December 28, 1908, to have been material to the issue in the case then on trial; that the indictment only charges that it was a material inquiry whether the said James C. Bell, John Patterson, and George B. Thompson were in the town of Huntington, in Sebastian county, state of Arkansas, during the day and night of December 28, 1908, and early in the morning of December 29, 1908. It is very plain that the indictment does not, in specific terms, charge that the evidence which Ammerman gave upon said trial was material to any issue in that case. The concluding averment does not aid the indictment in this respect; that was not the statement of any facts, but merely a conclusion of law by nonprofessional grand jurors that the facts before stated constituted perjury. Bishop's New Crim. Proc. vol. 2, § 903. The failure to specifically charge that the alleged false testimony was material does not vitiate the indictment, if the facts set forth as falsely testified to be sufficient in themselves to show such materiality. Bishop's New Crim. Proc. vol. 2, § 921.

The alleged material fact was whether the parties then upon trial were at Huntington, Sebastian county, state of Arkansas, during the day and night of December 28, 1908, and early in the morning of December 29, 1908, and in determining that question we think that evidence showing that the defendants were at Sapulpa, Okl., as late as 8 or 9 o'clock in the morning of the 28th was material. This evidence would not necessarily or conclusively establish the fact that they were not at Huntington, Ark., at some time during that day and night and early in the morning of the 29th, yet it was competent evidence as tending to show that they were not at Huntington at the time alleged, and its exclusion would have been erroneous, so we think the facts as stated in the indictment show that the alleged false testimony was material, and that the indictment was good as against a motion in arrest of judgment, though it did not contain a specific allegation that such evidence was material to any issue in the case then on trial.

On the trial of the case the government called one Hendricks as a witness, who testified to being present at the trial of Thompson, Bell, and Patterson, and as to the testimony given by said Lon Ammerman on said trial, the same being substantially as alleged in the indictment, to wit: That Bell and Patterson were at his hotel, the Buffalo Hotel, in Sapulpa, Okl., from about the 23d of December until the 28th of December, and that they ate breakfast there on the morning of the 28th, and left about 8 or 9 o'clock. The witness was then asked by counsel for the government if, on the trial of Thompson, Bell, and Patterson, the register of the Buffalo Hotel was introduced in evidence. Counsel for defendant Ammerman objected to the question as immaterial; that it was not competent to prove on this trial whether such register was introduced on the former trial. The ob-

jection was overruled, and defendant excepted. Thereupon the witness answered that it was not. Defendant then moved to exclude the answer because the same was immaterial, irrelevant, and incompetent on the trial of this case. The motion was overruled, and defendant excepted.

Counsel for the government seek to sustain the admission of this testimony by citing numerous authorities in support of the following proposition:

"Where the evidence which, if produced, would controvert or confirm some incriminating facts proved against him, and which is also clearly within his knowledge and his power to obtain, is not produced by the accused, the jury may consider the fact in determining the credibility of the evidence against him."

The correctness of this rule of law may be accepted, but it clearly has no application to this case. Defendant Ammerman was not a party in the case of the government against Thompson, Bell, and Patterson. He did not have control of the management and trial of that case. He was simply called as a witness and was not responsible in any way for the omission to have the hotel register introduced in evidence. This testimony was clearly inadmissible and prejudicial, as it may well be said that the failure to introduce the hotel register would naturally impress the jury with the idea that, as the register was not given in evidence, it did not substantiate the testimony of defendant Ammerman, but, on the other hand, would have contradicted his testimony.

One Lillie Quick was called as a witness and testified that, on the 28th of December, 1908, while she was at work washing, at Huntington, Ark., three men came down the railroad track. One of them crossed the creek and came over to where she was. This man she identified as Thompson; was unable to identify either of the other men, but described one as resembling in size and appearance the man Bell. This testimony was objected to for the reason that, whether Thompson was in Huntington, Ark., on the 28th of December, 1908, was wholly immaterial, as defendant was not charged with having testified as to the whereabouts of Thompson. The objection was overruled. Several other witnesses were called and permitted to testify over the objection of defendant as to Thompson being seen at Huntington on the 28th of December, 1908, in company with two other persons. The materiality of this testimony as to Thompson being at Huntington on the 28th was doubtless admitted as a circumstance tending to show that the other two persons with him were Bell and Patterson.

Defendant Ammerman in his defense offered testimony that Thompson was at Tulsa, Okl., and registered at the Marshall Hotel there, on said December 28, 1908, and occupied a room there that night. This testimony was objected to on the part of the government and the objection sustained, to which defendant excepted.

We fail to perceive why, if it was competent for the government in this case to give evidence identifying Thompson as being in Huntington on the 28th, in company with two other men resembling Bell and Patterson, as tending to establish the material fact that Bell and

Patterson were in Huntington on that date, and not at Sapulpa, the evidence offered on the part of defendant Ammerman, tending to contradict the fact of Thompson's presence in Huntington, was not competent and material.

The government called as a witness one R. M. Gillim, who gave material and incriminating testimony against defendant. On cross-examination he was asked questions tending to prove, and defendant Ammerman offered to prove by this witness, that he was under indictment for perjury growing out of his testimony as a witness during the trial of Thompson, Bell, and Patterson; that his case was the first one of five or six indictments for perjury, growing out of that trial; that his case had been passed until after the trial of defendant Ammerman; that witness had been advised by his attorney that, if he would come and testify against the defendant Ammerman, he would not be prosecuted under the indictment against him for perjury, but would be turned loose. This testimony was objected to and excluded, to which defendant excepted. The mere fact alone that witness had been indicted for perjury was probably incompetent and immaterial. But, in connection with the fact that he had been advised by his attorney that, if he would testify against the defendant Ammerman, he would be given immunity from prosecution under the indictment against him, was certainly competent to go to the jury; not that the government was bound by any statements or representations made to the witness by his counsel, but as showing the condition of mind of the witness, and the hope entertained by him that, in giving testimony against Ammerman, he would profit thereby, such evidence was admissible as bearing upon the credibility of the witness.

After the close of the evidence, counsel for the government, in his opening argument, in commenting upon certain testimony given by the witness Gillim, said:

"That Gillim's testimony must be taken as true because the defendant had not gone on the witness stand and denied it."

The court, on its own motion, instantly stopped the attorney, and defendant's counsel at the same time excepted to the foregoing remark. The court then stated to the jury:

"That the remarks of the assistant district attorney were improper; that he had no right to make them, and the jury should not draw any unfavorable conclusion or inference against defendant from such remarks; that the law prohibited the assistant district attorney from commenting as he had upon the defendant's conduct in not contradicting Gillim; that it was a gross impropriety for him to have done so; and that his statement should be entirely disregarded."

Subsequently the court, after having instructed the jury as to the law applicable to the case, said:

"Now, gentlemen, there is one other matter which I want to call your attention to because I want to remove it entirely out of this case. By inadvertence, I suppose, reference was made by the assistant district attorney in the opening argument that the defendant had not appeared to contradict some witnesses that had testified against him in the case. That was a breach of propriety. It was unauthorized. It was in violation of the statute, and should not have been said, and you should just simply disregard it entirely— take it out of the case—leave it out and discard it and pay no attention to it

whatever; discard it entirely. It is not properly before you and doubtless was inadvertently done."

The prompt and unequivocal action of the judge, in condemning the conduct of counsel and instructing the jury not to give the remark any consideration whatever, was sufficient to remove any prejudice. We cannot refrain, however, from saying that counsel, in their zeal to enforce obedience to the law on the part of others, should not themselves grossly violate it.

The judgment is reversed, and a new trial granted.